**DAVID J. HOLDSWORTH (4052)**
Attorney for Plaintiff
9125 South Monroe Plaza Way, Suite C
Sandy, UT 84070
Telephone (801) 352-7701
Facsimile (801) 567-9960

---

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

---

| | | |
|---|---|---|
| ALAN HENDRICKSON, | : | **COMPLAINT** |
| | : | **(JURY TRIAL DEMANDED)** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| RELIANCE STANDARD LIFE | : | |
| INSURANCE COMPANY and/or | : | |
| MATRIX ABSENCE | : | |
| MANAGEMENT, INC., | : | Case No. 2:19-cv-00073-TS |
| | : | |
| Defendant. | : | Honorable Ted Stewart |

---

COMES NOW, the Plaintiff Alan Hendrickson (hereinafter "Mr. Hendrickson"), complains of Defendants Reliance Standard Life Insurance Company and/or Matrix Absence Management, Inc., demands a trial by a jury as to all issues triable by a jury (if any), and, as and for causes of action, alleges as follows:

## I. JURISDICTION

1.  Mr. Hendrickson brings this action pursuant to the Employee Retirement Income Security Act of 1974, ("ERISA"), as amended, 29 U.S.C. § 1001, et

seq.  Jurisdiction is based on federal question, 28 U.S.C. §§ 1331, 1332 — namely, the interpretation and application of various provisions of the ERISA and, specifically, § 502 (e) (1), 29 U.S.C. § 1132 (e) (1).

## II.  PARTIES

2.     Plaintiff Alan Hendrickson is a citizen of the United States, who, at all times relevant hereto, was a resident of the State of Utah or who maintained a presence in the State of Utah, and was an employee of the Wyndham group of companies (hereinafter "Wyndham").

3.     At all times relevant hereto, Mr. Hendrickson was employed by Wyndham as a sales representative.

4.     On information and belief, Defendant Reliance Standard Life Insurance Company (hereinafter "Reliance"), is a business which does business in the State of Utah.

5.     On information and belief, Defendant Matrix Absence Management(hereinafter "Matrix"), is an entity which does business in the State of Utah.

6.     On information and belief, Mr. Hendrickson alleges Reliance provides group short-term disability insurance coverage and benefits and group long-term disability insurance coverage and benefits to qualifying employees of Wyndham

2

pursuant to employee group health and welfare plans provided by Wyndham to Wyndham employees by virtue of their employment with Wyndham.

7.     On information and belief, Mr. Hendrickson alleges that Reliance is the "plan administrator" for Wyndham's group short-term disability insurance and long-term disability insurance plans and administers the above-described short-term disability insurance and long-term disability insurance plans and benefits for employees of Wyndham.

8.     On information and belief, Mr. Hendrickson alleges that Matrix is the "third party administrator" for the Reliance group short-term disability insurance and long-term disability insurance plans for Wyndham employees.

### III.  VENUE

9.     Venue in this Court is proper in that the causes of action alleged herein arose in the federal District of Utah or is otherwise properly laid in the federal District of Utah, ERISA § 502 (e) (2), 29 U.S.C. § 1132 (e) (2).

### IV.  STATEMENT OF FACTS

10.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 9 above as if alleged in full herein.

11.     At all times relevant herein, Mr. Hendrickson was employed by Wyndham and covered under the above-referenced applicable Wyndham group disability insurance plans/policies.

12.     While employed with Wyndham, Mr. Hendrickson began experiencing several serious physical and mental health conditions and impairments.

13.     Such serious health conditions and impairments fall into the category of "illness or injury" within the meaning of the group long-term disability policy.

14.     Such serious health conditions and impairments substantially limited Mr. Hendrickson's ability to sit, concentrate, communicate, interact with others, solve problems, multitask, and follow through.

15.     Beginning in late 2015, and continuing through early 2016 and into early mid-2016, Mr. Hendrickson's health worsened.  His  health conditions and impairments caused him to miss days and parts of days of work and to be unable to maintain regular attendance, work full time or productively time from approximately late April 2016 forward.

16.     As his conditions and impairments summarized above worsened and acted in combination with each other, such constellation of physical and mental impairments caused Mr. Hendrickson to be unable to perform the material and

4

substantial duties of his own occupation on a regular, full-time, sustained, continuous, competitive, productive basis and in a productive and successful manner.

17.    Such illnesses or injuries caused Mr. Hendrickson to be unable to work a full eight-hour workday and when he was able to show up to work, to work productively.  Thus, in and after mid-2016, due to illness and injury, Mr. Hendrickson became unable to perform all of the material and essential duties of his own occupation on a regular, full-time, sustained, continuous, competitive and productive basis.

18.    In approximately mid-2016, Mr. Hendrickson applied for group long-term disability insurance benefits with Matrix on the basis of several physical and mental impairments: primarily, facial dermatitis, joint pain, stress, anxiety, panic attacks, depression, and sleep apnea.

19.    Reliance/Matrix approved Mr. Hendrickson's claim for long-term disability insurance benefits and paid such benefits for the period of October 25, 2016 to June 1, 2017.  These benefits were paid in a lump sum around January 31, 2017.

20.    As discussed above, in late January/early February 2017, Reliance/Matrix informed Mr. Hendrickson he had qualified for some long-term disability insurance benefits and it was going to be paying him those benefits.

21.    When Reliance/Matrix informed Mr. Hendrickson of such developments, Mr. Hendrickson informed Reliance/Matrix that he was going to be

going out of the country very soon, so he requested that Reliance/Matrix overnight the long-term disability insurance benefits check to him by overnight mail or other expedited means of delivery.  Reliance/Matrix did so and the check was delivered just the day before Mr. Hendrickson left the U.S.  Mr. Hendrickson alleges that, at the time it delivered the check, Reliance/Matrix did not inform Mr. Hendrickson about any denial of further benefits or any forthcoming letter setting forth such denial of further benefits.

22.     In a letter to Mr. Alan Hendrickson dated February 2, 2017 Reliance/Matrix notified Mr. Hendrickson of its decision to deny long-term disability insurance benefits to Mr. Hendrickson beyond June 1, 2017.  Reliance/Matrix denied eligibility for any long-term disability insurance benefits after June 1, 2017 on the ground that the report of an IME evaluation on January 16, 2017 "concluded that [1] you [Mr. Hendrickson] are capable of maintaining work in a low-stress environment; and [2] that [Mr. Hendrickson's] symptoms should remit sufficiently to allow [Mr. Hendrickson] to return to work within four to six months from the date of the [January 16, 2017] evaluation".

### *Timeliness of Appeal*

23.     Mr. Hendrickson did not receive the Reliance/Matrix letter dated February 2, 2017 on or after February 2, 2017.  He did not actually see the February 2,

2017 letter until his step-son forwarded it to him (Mr. Hendrickson has lived in the

Ukraine since February 2017) in April 2018.  Note, for example, that, after February 1,

2017, Reliance/Matrix's effort to get Mr. Hendrickson to respond to its requests went

unanswered.  *See* Reliance/Matrix's letters to Mr. Hendrickson dated February 3, 2017,

February 4, 2017 and February 13, 2017.  Mr. Hendrickson was out of the country,

living in the Ukraine.  That's why Mr. Hendrickson never responded to the February 2,

2017 letter or the post-February 2, 2017 letters.  He never received the February 2, 2017

letter until approximately April 2018.

24.      By letter dated July 18, 2018, Mr. Hendrickson appealed

Reliance/Matrix's decision to deny long-term disability benefits beyond June 1, 2017.

25.      Reliance/Matrix deemed Mr. Hendrickson's July 18, 2018 appeal

to be timely and reopened Mr. Hendrickson's claim.

### *The Merits of the Appeal*

26.      It appears that Reliance/Matrix did not enclose of copy of the IME

report with its February 2, 2017 letter.  Mr.Hendrickson alleges that the IME

psychologist who prepared the IME report may have reviewed some medical records

and did interview Mr. Hendrickson, but did not perform any psychological testing.

27.      In any event, it appears that Reliance/Matrix denied Mr.

Hendrickson's claim for further long-term disability insurance benefits on the following

7

premises: (a) that Mr. Hendrickson could work in a low-stress environment; (b) Reliance/Matrix assumed that the work environment he was working in or would be returning to work in was a low-stress environment; and (c) therefore, Mr. Hendrickson could return to work for Wyndham.  All of these were dubious assumptions.

28.    In terms of the stress level of Mr. Hendrickson's workplace and occupation, Reliance/Matrix's staff vocational analyst addressed the <u>physical</u> demands of Mr. Hendrickson's job.  It does not appear that Reliance/Matrix's staff vocational anyalyst addressed the mental and social demands of Mr. Hendrickson's job or what the job required in terms of production (*i.e.,* sales) quotas, targets or requirements.  True, the vocational analyst did acknowledge that Mr. Hendrickson's occupation involved dealing with people and making decisions, but the vocational analyst's report contained no analysis of pressures on sales agents (sales representatives) to sell or whether their job was commission only or involved some other form of compensation arrangement.

29.    On appeal, Mr. Hendrickson argued that basing a decision to deny further disability insurance benefits on the ground that Mr. Hendrickson's workplace or occupation was low stress solely because of the physical demands of the job seemed to be a grossly incomplete way to determine if Mr. Hendrickson was disabled within the meaning of the policy.

8

30.     Mr. Hendrickson contended the work environment he was working in and his occupation, in general, was anything but low stress.

31.     Reliance/Matrix also denied Mr. Hendrickson's claim for further long-term disability insurance benefits on the following premises: (a) that Mr. Hendrickson was having disabling symptoms as of January 2017; but (b) that such symptoms <u>should</u> remit within four to six months from the January 16, 2017 IME visit so that he could return to work as such symptoms should be remitting.  These were also dubious propositions.

32.     Mr. Hendrickson alleges his symptoms did not remit or even improve, but have continued and even gotten worse after January 16, 2017.  So, he alleges that the decision to end long-term disability insurance benefits after June 1, 2017 because Mr. Hendrickson was projected in January 2017 to improve by then is a grossly inaccurate and incomplete way to determine if Mr. Hendrickson was disabled within the meaning of the policy.  Mr. Hendrickson alleges that there was no follow up IME in May or June 2017 to determine if he had improved.

33.     In sum, Reliance/Matrix denied Mr. Hendrickson's claim for further or ongoing long-term disability insurance benefits "given these facts", which were not really facts at all, but assumptions, and questionable assumptions at that.  Mr.

Hendrickson was not offered the ability to return to a low stress work environment and his psychological conditions did not improve by June 1, 2017.

34.    Accordingly, by letter dated July 18, 2018, Mr. Hendrickson filed an appeal/request for review.

35.    To provide further support for his appeal/request for review, Mr. Hendrickson submitted a number of medical records. He requested Reliance/Matrix to add these to the file and give them careful consideration.

36.    He also mentioned three other concerns:

(1)    That, because of Mr. Hendrickson's disability and inability to work, he had not been able to get as much treatment as he would like or needs. Thus, the relative paucity of medical records after February 2017 was not due to Mr. Hendrickson's conditions improving and him no longer needing treatment. Just the opposite was the case. His lack of employment, lack of health insurance coverage, and lack of funds has increased his anxiety and depression, not decreased it.

(2)    That Mr. Hendrickson had a serious question as to whether Reliance/Matrix had calculated the long-term disability insurance benefits it did pay him in a correct manner. He explained that, in the eight/nine months he was with Wyndham, he made approximately $74,572. This amount, divided by 8.5

10

months equals $8,773.18 a month.  This is more than double the monthly salary upon which Reliance/Matrix had calculated Mr. Hendrickson's long-term disability insurance benefit.  Mr. Hendrickson alleges that the correct benefit amount per month should have been $8,773.18 x 60% = $5,263.91.  Thus, even with the offset for Social Security primary <u>retirement</u> (not disability) of $1,739.00, the net monthly benefit would be $3,524.91 and from October 25, 2016 to June 1, 2017, the net benefit payable would total $25,485.60.  This figure was much higher than the amount of benefits which Reliance/Matrix paid Mr. Hendrickson.

(3)    That Mr. Hendrickson has applied for Social Security Disability Insurance benefits and was going through the standard administrative denial and review process.

37.    By letter dated August 7, 2018, Reliance/Matrix responded to Mr. Hendrickson's appeal dated July 18, 2018.

38.    By letter dated August 7, 2018 Reliance Standard Life Insurance Company responded regarding Mr. Hendrickson's claim and addressing the question he had raised in his letter of July 18, 2018 regarding calculation of Mr. Hendrickson's pay rate (and, therefore, his long-term disability insurance compensation rate).  *See* Mr. Hendrickson's letter of July 18, 2018, page 4, point #1.

39.    In Reliance's letter to Mr. Hendrickson of August 7, 2018, Reliance stated that Mr. Hendrickson had exhausted his administrative remedies under the Plan as to this pay rate dispute and had to file a lawsuit under ERISA to pursue the matter further.

40.    Mr. Hendrickson alleges Reliance/Matrix's calculations as to his rate of compensation with Wyndham are not correct, and, as a matter of fact, greatly under-calculates his rate of compensation with Wyndham.

41.    Thus, Mr. Hendrickson continues to disagree with these pay rate calculations. *See* Mr. Hendrickson's e-mail to the undersigned dated September 23, 2018, at 5:07 a.m.

42.    In reviewing Reliance/Matrix's calculations, Mr. Hendrickson believes that Reliance/Matrix has made critical mistakes in the calculation of his relevant income for 2015 and 2016.  Mr. Hendrickson explains:

> As quoted in the policy, calculations and benefits are determined by "[earned] commissions" which full-time sales people earn — this includes the vast majority of income for these commission based positions.

> The drastic errors made in calculating commission income may be attributed either to Reliance for the terminology used to request the relevant numbers from Wyndham, [or] the choice of income categories included/excluded by Wyndham or both.

12

On examination, you will find that my 2015 Income Statement includes 12 categories of earnings, only one of which was included in the calculation.   In fact, half of these categories are earned commissions tied directly to sales generation.

Only the category abbreviated as "salesrep comm" (which represents actual minimum base commission) is included, $24,792.08.

The second commission category ( which can be equal to or even greater than base commission) is incremental commission, shown on the statement as salesrep inc.  This is the amount added to equal the actual total commission on each sale according to the sales achieved by the rep for the month.  This is paid once a month after the total month's sales have been calculated. This is a critical part of the commission and is quoted and specified clearly in the pay plan for the position.  The higher the sales volume for the month the higher the commission percentage for each sale[.] [T]his portion is applied retroactively since the company doesn't know what the total commission percentage will be at the time of the sale so that the rep can be paid some amount (the base commission in the first category) with regular payroll.

Example:

Monthly Commissions
    Sales of $0 to $40,000     5%
    $40,001 to $60,000     6%
    $60,001 to $80,000     7%
    etc., up to a maximum of 15% at some level and above

Again, this is a standard commission calculation throughout the timeshare industry, easily verifiable by anyone in administration at Wyndham or any timeshare company and without which no company would

13

be able to recruit sales people. This amount for 2015 is
$11,530.07.

The third commission category is "gifts".
[T]his is an amount paid for a sale of a specific amount on a
specific day, directly tied to the sale, not paid without the
sale and is an incidental earned "commission", $662.00.

The fourth category is Presenter base. This is
the base commission paid to a person making a group
presentation which results in a sale. It is a percentage of the
actual sales made, not a salary or any other type of
compensation other than "commission", $276.75.

The fifth category is Sampler Comm. , as in
"commission" paid for the sale of a sampler package,
$508.85.

The sixth and final category is Sampler Bon.
[This is] an incremental commission paid based on monthly
sample volume achieved, exactly like the Incremental
commission category for regular sales as detailed above,
$115.70.

My 2016 statement is simpler and only
excludes a small amount of commission paid after the
3/31[16] cutoff date specified by Reliance  but earned
previous to that date. The total is $11,578.35.

And the above described and detailed
Salesrep Inc. (Incremental commission), $12,814.73.

All together, commissions total $62,278.53,
which, since it is above the $50K minimum, should be
divided by the length of time during which I was eligible to
earn commissions (July 4, 2015, my first day on the sales
floor, to March 31, 2016, my last day to see a potential
client), so a little under nine months, $62, 278.53 / 9 =

14

$6,919.84 per month x .6 = $4,151.90 per month, resulting in an underpayment of $1,651.90 per month for the (8 ?) months they paid for, resulting in an underpayment of $13,215.20 and current benefits from the dates paid to this month of $2,412.90 per month (after deducting my Social Security benefit) totaling $36,193.50, for a total due of $49,408.70 as of the end of this month.

Note: the method Reliance used for calculating my length of employment (from my first commission paid to my disability date), works out almost exactly the same.

43.    To try and avoid a time consuming and expensive fight, Mr.

Hendrickson had his counsel send a letter to Reliance/Matrix dated October 11, 2018.

In said letter, Mr. Hendrickson's counsel explained the basis for Mr. Hendrickson's

disagreement with the Reliance/Matrix's calculations.

44.    Mr. Hendrickson's attorney ended this October 11, 2018 letter with

the following:

[B]ecause this particular issue is based on objective data and pay records — namely, what he earned and what Wyndham paid him — I would request and urge Reliance Standard to review Mr. Hendrickson's information submitted herewith and work with us in avoiding a further expenditure of time and resources on a matter which should be non-controversial.

45.    Reliance/Matrix responded via letter to Mr. Hendrickson dated

October 11, 2018 regarding Mr. Hendrickson's claim for long-term disability benefits.

In said letter of October 11, 2018, Reliance/Matrix declined to address the merits of Mr.

Hendrickson's concerns with inaccurate and incomplete calculation of his benefits. Mr. Hendrickson desires to appeal the decisions conveyed by such letter.

46.    Mr. Hendrickson is challenging the decisions announced in Reliance/Matrix's August 7, 2018 and October 11, 2018 letters because of the dispute regarding his pay rate, as discussed above.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

47.    Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 46 above as if alleged in full herein.

48.    Mr. Hendrickson alleges that Reliance/Matrix's decisions to calculate his long-term disability insurance benefits at an incorrect and incomplete basis and to fail to correct the same when presented with proper information is arbitrary, capricious, unreasonable and/or an abuse of discretion and constitutes a violation of his rights under ERISA.

49.    Mr. Hendrickson alleges he has exhausted all applicable administrative remedies or that further exhaustion would be futile.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION
## FOR A DECLARATION THAT RELIANCE'S
## DECISIONS AND DENIALS WERE ARBITRARY AND CAPRICIOUS

50.    Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 49 above as if alleged in full herein.

51.    Mr. Hendrickson alleges that, under the circumstances of the instant case, Reliance/Matrix's decision to not correct the rate it had used to pay him long-term disability insurance benefits was arbitrary, capricious, unreasonable and an abuse of discretion.

52.    Mr. Hendrickson requests the Court to grant declaratory relief to that effect.

**SECOND CAUSE OF ACTION**
**UNDER ERISA FOR RECOVERY OF BENEFITS**

53.    Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 52 above as if alleged in full herein.

54.    Wyndham's Group Disability Plans are subject to the ERISA.

55.    Mr. Hendrickson is a participant or beneficiary in such Plans.

56.    From October 25, 2016 and thereafter, to October 25, 2018, Mr. Hendrickson was disabled, as defined in the Plans, and was eligible for long-term disability insurance benefits under the Plans.

57.    Mr. Hendrickson has satisfied all the conditions required of him by the above-named Plans to qualify for long-term disability insurance benefits.

58.    Reliance/Matrix has failed to include all sources of earnings in calculating his long-term disability insurance benefits and has, therefore, miscalculated his benefits and underpaid him.

59.    Reliance/Matrix has failed and neglected, and is still failing and neglecting, to calculate correctly and to pay the full amount of long-term disability insurance benefits due to Mr. Hendrickson under the Long-Term Disability Plan.

60.    For the reasons set forth above, Mr. Hendrickson alleges that Reliance/Matrix's reasons for doing so are arbitrary, capricious, unreasonable, and an abuse of discretion.

61.    By so doing, Reliance/Matrix has deprived Mr. Hendrickson of his rights to benefits under the Plan, in violation of ERISA § 502 (a) (1) (B) and 29 U.S.C. § 1132 (a) (1) (B).

62.    Such actions and inactions have caused Mr. Hendrickson harm, injury, loss and damage.

63.    Such actions and inactions have also necessitated Mr. Hendrickson to hire counsel and to incur attorney's fees and costs.

64.    Mr. Hendrickson has exhausted all his administrative remedies under the Plans or alleges that further pursuit of administrative remedies would be futile.

65.     ERISA provides means for Mr. Hendrickson to be able to enforce his claim for long-term disability insurance benefits under the Plans.

66.     Mr. Hendrickson contends that Reliance/Matrix's initial and continuing denials of his claim for full long-term disability insurance benefits are contrary to the facts, and contrary to the weight of the totality of the evidence, and are, therefore, arbitrary, capricious, unreasonable and an abuse of discretion.

67.     Accordingly, Defendant Reliance/Matrix is liable to pay Mr. Hendrickson the amount of long-term disability insurance benefits determined to be owed him after October 25, 2016 to October 25, 2018, and on an ongoing basis, plus pre- and post-judgment interest to the date on which he is no longer disabled and the reasonable attorney's fees and costs he has incurred in bringing this action, all pursuant to 29 U.S.C. § 1132 (g).

WHEREFORE, Plaintiff prays for judgment against Defendants Reliance/Matrix and seeks the following relief:

1.     For the value of the long-term disability insurance benefits which Reliance/Matrix has underpaid him;

2.     For pre- and post-judgment interest;

3.     For attorney's fees and court costs; and

4.     For such further relief as may be just and/or equitable.

DATED this 30th day of January, 2019.


_/s/ David J.  Holdsworth_____

David J.  Holdsworth
*Attorney for Plaintiff*

VERIFICATION

Alan Hendrickson, being first duly sworn, upon his oath, deposes and says that he is the Plaintiff in the above-entitled action, that he has read the foregoing COMPLAINT and understands the contents thereof, and the allegations made therein are true of his own knowledge, except as to those matters alleged on information and belief which he believes to be true.


_/s/ Alan Hendrickson_____
Alan Hendrickson

SUBSCRIBED AND SWORN to before me, a Notary Public, this ____ day of _____, 20___.


_____
NOTARY PUBLIC

MY COMMISSION EXPIRES:    RESIDING AT: _____

_____